**103 INVESTORS I, L.P., Plaintiff,**

v.

**SQUARE D COMPANY, Defendant.**

**No. CIV.A. 01–2504–KHV.**

United States District Court,
D. Kansas.

Aug. 30, 2002.

David R. Buchanan, Michael A. Childs, Andrew J. Nantz, Brown & James, P.C., Kansas City, MO, for Plaintiff.

Thomas N. Sterchi, James S. Kreamer, Baker, Sterchi, Cowden & Rice, L.L.C., Kansas City, MO, Christopher J. Stucky, Baker, Sterchi, Cowden & Rice, L.L.C., Overland Park, KS, for Defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

103 Investors I, L.P. alleges that Square D Company, which manufactures electrical distribution systems, is liable for a building fire caused when one of its products malfunctioned. Plaintiff proceeds under theories of negligence and strict liability. This matter is before the Court on Defendant's Motion To Exclude The Testimony Of Plaintiff's Experts Carl Martin and Byron W. Sherman And Corresponding Motion For Summary Judgment (Doc. # 30) filed June 3, 2002 and Plaintiff's Motion For Leave To Amend Scheduling Order, Amend Complaint, To [sic] Join Additional Party Defendant, Stay Pending Discovery, And Remand Case To State Court, Or In The Alternative Dismiss Without Prejudice (Doc. # 41) filed June 25, 2002. After carefully considering the parties' arguments and authorities, the Court is ready to rule.

1. Regarding defendant's summary judgment motion, the Court notes that plaintiff attempts to controvert some of the proffered facts but, in several instances, does not cite factual support for its opposition. Under D. Kan. Rule 56.1(b), plaintiff must refer with particularity to those portions of the record upon which it relies to support its denial. The Court will therefore deem uncontroverted defendant's proffered facts that (1) Carl Martin admitted that there was no defect with respect to the design of the busway; (2) the expert reports did not contain any opinion or conclusions with respect to the manufacturing of the busway; (3) Martin has never been involved in the design or manufacture of a busway; (4) the expert reports do not identify the contaminants on the busway or state how or when they got into the busway system; (5) Martin never personally used the insulation that was on the busways in this case; (6) Martin did not perform any tests or analyze the insulation to determine that it was a Mylar type wrap; (7) Martin based his conclusions regarding the fire on photographs of the burn patterns, calcination on the drywall, burn patterns in the electrical supply closet and the damaged condition of the busway; (8) Martin

## Factual Background

Both parties have submitted their Daubert briefs in summary judgment format and neither party has asked for an evidentiary hearing. Although the Court would typically set a hearing in a Daubert matter where facts were disputed, the questions before the Court can be decided on the face of the written reports and summary judgment record. For purposes of determining whether to exclude plaintiff's experts, the Court has deemed the allegations within their reports of February 18, 2002 and March 25, 2002 to be true.

The following facts are either undisputed or, where disputed, construed in the light most favorable to plaintiff.[1]

On March 1, 2001, a fire occurred in the electrical room in the second floor of plaintiff's building at 10551 Barkley, Overland Park, Kansas. Plaintiff's building contained "busways," systems of four insulated aluminum bars that serve as conduits

did not have photographs of materials that could have been burning in the middle of the room; and (9) Martin did not have an exhaustive list of all the flammable items in the room.

To controvert many of defendant's asserted facts, plaintiff also attempts to rely on an untimely expert report dated July 11, 2002. For reasons explained in this order, that report is inadmissible because it is untimely. See Fed.R.Civ.P. 26(2)(B) (experts must disclose all opinions to be expressed in their report); Fed.R.Civ.P. 37(c) (party may not use evidence not disclosed under Rule 26 at trial or on a motion); Second Amended Scheduling Order (Doc. # 16) filed April 4, 2002 (plaintiff's expert reports due April 1, 2002 and June 1, 2002). Plaintiff relies on the later expert report to controvert defendant's proffered facts that Martin was not sure what the contaminants in the insulation were; that Martin did not know how or when the contaminants entered the busway system; and that Martin agreed that the contaminants could have entered the system after it had been installed. The Court will therefore deem defendant's facts regarding these matters uncontroverted.

for electrical wiring. The bars are enclosed in an aluminum casing and run from the basement to the top floor of plaintiff's building. Busways are commonly used in commercial buildings to distribute electricity to various floors. Defendant manufactured the busways, which another company installed in 1978. Until March 1, 2001, the busways had performed their function without incident. Plaintiff alleges that on that date, however, one of the busways malfunctioned and caused the fire.

Four months later, in July 2001, plaintiff retained Carl Martin to conduct an investigation and evaluation. Except for a small portion of the busway, the contents of the electrical room had been destroyed before plaintiff retained Martin.[2]

In November 2001, Martin employed Byron W. Sherman to inspect the remaining portion of the busway. Using a fluoroscope, Sherman conducted a non-destructive inspection of part of the busway. Sherman did not observe any deterioration or contamination in the busway system, but he found a failure of the insulation in the busway and some metallic substance in the inner busbars.[3] Sherman has no opinion regarding what caused the insulation to

fail, or whether any warning, design or manufacturing defects were present.

On February 18, 2002, Martin and Sherman prepared a joint expert report. On March 25, 2002, Martin prepared his own expert report, which states that "the fire and heat damage depicted in the fire scene photographs emanated from the inner bus bars of the bus duct located in the corner of the equipment room." March 25, 2002 Expert Report (Exhibit D) in Defendant's Summary Judgment Motion (Doc. # 30) at S–3. Martin's report states that contaminants inside the busway insulation caused a short circuit, which in turn caused the fire. The report states that Martin found contaminants in the busway insulation, but it does not state what the contaminants were composed of, how or when they got in the busway system, or who allowed them to do so. In his reports and at his deposition, Martin stated that the contaminants looked like whitish particles and aluminum or metallic balls and very thin flakes.[4]

Neither report contains any conclusion or opinion regarding failure to warn, or the design or manufacture of the busway system.[5, 6] In determining that the fire start-

---

2. Defendant asserts that Martin's opinions were based primarily on an inspection of that small piece of busway and photographs. Plaintiff controverts this assertion and defendant's cited deposition testimony does not support it. Under D. Kan. Rule 56.1(a), all facts upon which a motion for summary judgment is based shall "refer with particularity to those portions of the record upon which movant relies." Defendant did not properly support this asserted fact, so the Court disregards it.

3. Defendant asserts that Sherman did not see any defect in the busway system. The cited deposition testimony, however, states that he did not see any deterioration or contamination in the system. See Deposition Of Byron Sherman (Exhibit B) in Defendant's Motion To Exclude The Testimony Of Plaintiff's Experts Carl Martin And Bryon W. Sherman

And Corresponding Motion For Summary Judgment ("Defendant's Summary Judgment Motion") (Doc. # 30) filed June 30, 2002 at 22:6–8.

4. Martin did not personally test them and although he was not sure, he hypothesized at his deposition that they were probably introduced during the manufacturing process. He admitted, however, that they could have entered the system after it was installed.

5. Martin admits that he has never been involved in the design or manufacture of any busway, does not know how this particular busway was manufactured or what precautions were taken during the manufacturing process, and is not familiar with the industrial codes which governed the design and manufacture of this busway. He does not believe that the busway's design was defective and

ed in the corner of the room where the busway was located, Martin relied on general information from maintenance personnel, and information and photographs of a portion of the room where the fire started.[7] In concluding that the fire originated inside the busway, Martin relied on photographs of the burn patterns, calcination of the drywall, burn patterns in the electrical supply closet, and the damaged condition of the busway.

On September 19, 2001, plaintiff filed suit in the District Court of Johnson County, Kansas, asserting theories of negligence and strict liability based on a manufacturing defect and failure to warn.[8] On October 18, 2001, defendant removed the case to federal court. Defendant now seeks summary judgment, alleging that plaintiff lacks admissible expert testimony and that it is therefore entitled to summary judgment. Plaintiff insists that its expert reports are sufficient and asks the Court to withhold ruling on defendant's summary judgment motion and allow it to amend its complaint to add an additional defendant. Because the proposed amendment would deprive the Court of diversity jurisdiction, plaintiff also asks the Court to remand the case to state court in Johnson County, Kansas, where it might be consolidated with another case between the parties which is pending there.

## Analysis

### I. Plaintiff's Motions

On April 4, 2002, the Court entered an Amended Scheduling Order (Doc. # 16) which stated that any motion for leave to join additional parties or otherwise amend the pleadings was due May 1, 2002. Eight weeks past that date, on June 25, 2002, plaintiff filed a motion to amend its complaint to add Central Maintenance Systems Inc. as a defendant. Plaintiff asks the Court to amend the scheduling order so that its late motion to add the new defendant will become timely. Because both plaintiff and Central Maintenance Systems are Kansas corporations, joinder will destroy the Court's diversity jurisdiction. See 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."); *Stubbs v. Kline,* No. 97–2133 JWL, 1998 WL 295598, at *2 (D.Kan. May 20, 1998) (case remanded to state court due to joinder of non-diverse defendants). Plaintiff therefore asks the Court to remand the case to state court, where plaintiff and defendant are involved in other litigation regarding this fire. If the Court denies the motion to add Central Maintenance

---

has no opinion whether defendant met the applicable industrial codes regarding its manufacture. Martin has never personally used the insulation that was on this busway.

6. Defendant asserted that Martin was not familiar with the insulation used on the busway, but his actual testimony was that he had never personally used the insulation.

7. Martin did not have photographs of materials that may have burned in the middle of the room. He acknowledged that the room contained baseboard trim and flooring material that were combustible, and that he had not received an exhaustive list of combustible

items in the room. At the time of his deposition and when he had prepared his expert reports, Martin had not conducted any test of his theory that the fire originated in the busway.

8. *Plaintiff's amended complaint also alleged liability under a theory of design defect strict liability. That claim is not included in the Pretrial Order (Doc. # 52) filed July 31, 2002, and the Court deems it to be abandoned. See D. Kan. Rule 16.2(c) ("The pretrial order ... will control the subsequent course of the action unless modified by the consent of the parties and court, or by an order of the court to prevent manifest injustice").*

Systems, plaintiff seeks leave to dismiss without prejudice. Defendant opposes every aspect of plaintiff's motion.

On July 31, 2002, after plaintiff filed its motion to amend the scheduling order, the Court entered the Pretrial Order (Doc. # 52) in this matter. At the time he drafted the pretrial order and presided over the pretrial conference, Magistrate Judge James P. O'Hara declined to rule on plaintiff's motion to amend the scheduling order because it was bundled with a potentially dispositive motion to dismiss. See D. Kan. Rule 72.1.1(c) (magistrate may rule on nondispositive pretrial matters). The pretrial order now supercedes all pleadings, however, and it controls the subsequent course of the case. See *Metzger v. City Of Leawood*, 144 F.Supp.2d 1225, 1258 (D.Kan.2001) (citing *Steil v. Humana Kansas City, Inc.*, 124 F.Supp.2d 660, 665 (D.Kan.2000)); Fed.R.Civ.P. 16(e); and D. Kan. Rule 16.2(c).

██ Under Rule 16(e) of the Federal Rules of Civil Procedure, the pretrial order "shall be modified only to prevent manifest injustice." Fed.R.Civ.P. 16(e); *Burnette v. Dresser Indus., Inc.*, 849 F.2d 1277, 1282 (10th Cir.1988). The decision to modify the pretrial order is within the trial court's discretion. See *id.* Amendment is proper if the moving party shows that by exercise of diligence, "the facts on which it bases its motion did not exist or could not be synthesized before" the pretrial order deadline. *Masek Distrib., Inc. v. First State Bank & Trust Co.*, 908 F.Supp. 856, 858 (D.Kan.1995); see *Joseph Mfg. Co., Inc. v. Olympic Fire Corp.*, 986 F.2d 416, 419 (10th Cir.1993). "[T]he burden of demonstrating manifest injustice falls upon the party moving for modification." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1222 (10th Cir.2000) (citation omitted). A motion to amend the pretrial order is committed to the Court's sound discretion. See *United Phosphorus, Ltd. v. Midland Fu-*

*migant, Inc.*, 205 F.3d 1219, 1236 (10th Cir.2000). Factors relevant in the exercise of that discretion include: "(1) prejudice or surprise to the party opposing trial of the issue; (2) the ability of that party to cure any prejudice; (3) disruption to the orderly and efficient trial of the case by inclusion of the new issue; and (4) bad faith by the party seeking to modify the order." *Koch*, 203 F.3d at 1222 (citations omitted).

Before plaintiff filed its motion to amend the scheduling order and/or the pretrial order, defendant filed both a summary judgment motion and motion *in limin* e under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Defendant would be prejudiced if the pretrial order were amended at this late date to allow motions to amend the complaint and joinder of parties. See *Eads ex rel. Eads v. Unified Sch. Dist. No. 289, Franklin County*, Kan., 184 F.Supp.2d 1122, 1130 (D.Kan.2002) (defendant prejudiced when it had already filed dispositive motion and had not conducted discovery on new claim). Plaintiff does not identify any way to cure this potential prejudice to defendant. In addition, pretrial proceedings in this case would be disrupted and delayed if the Court were required to entertain eleventh-hour motions for leave to amend. Moreover, plaintiff has not acted in a timely manner. Plaintiff asserts that it did not learn that Central Maintenance Systems might be liable until May 24, 2002, when defendant notified plaintiff that it intended to compare the potential fault of Central Maintenance Systems with that of plaintiff. Plaintiff further argues that it did not become aware of defendant's specific theory of liability as to Central Maintenance Systems until June 14, 2002, when the defense experts issued their final expert disclosures.

Defendant asserts that well before plaintiff filed its motions on June 14, 2002, plaintiff knew that defendant intended to present evidence regarding the culpability of Central Maintenance Systems. Specifically, defendant argues that it alerted plaintiff to its theory on May 6, 2002, when it answered plaintiff's interrogatories, and on May 16, 2002, when it provided preliminary expert reports.

Plaintiff's interrogatory 13 asked defendant to state the factual basis for its affirmative defense of comparative fault by plaintiff. In response, on May 6,2002, defendant stated

Plaintiff may have caused or contributed to the cause of the fire in one or more of the following ways: ...

**A. Failure to properly maintain the busway** ...

- Allowing the busway to be exposed to contaminants;
- Failure to secure the room in which the busway was located;
- Allowing combustible materials to be stored in the room in which the busway was located; ....

Defendant Square D Company's Response To 103 Investors I, L.P.'s Interrogatories To Defendant Square D Company (Exhibit D) in Defendant Square D Company's Objection to Plaintiff's Motion For Leave To Amend Scheduling Order, Amend Complaint, To Join Additional Party Defendant, Stay Pending Discovery, And Remand Case To State Court, Or In The Alternative Dismiss Without Prejudice ("Defendant's Objection") (Doc. # 47) filed July 12, 2002 at 13.

Plaintiff's interrogatory 14 asked defendant to state how and in what manner the acts of others may have caused or contributed to plaintiff's injuries. In response, on May 6, 2002, defendant identified (1) unknown individuals who stored combustible materials in the room in which the busway

was located, and (2) unknown individuals or entities who contributed to the busway being exposed to contaminants. *Id.* at 14. Plaintiff knew that Central Maintenance Systems provided janitorial services to its building, and it does not claim that entities other than Central Maintenance Systems stored items in the electrical room or controlled exposure to potential contaminants inside the electrical room.

Through defendant's preliminary expert report, which Ron Rush prepared on May 16, 2002, plaintiff also learned of defendant's claim that any malfunction in the busway system resulted from outside contamination of the busway system. See May 16, 2002 Expert Report (Exhibit C) in Defendant's Motion For Summary Judgment (Doc. # 47). Rush specifically opined that any malfunction occurred because water and cleaning chemicals had compromised the busway insulation. Rush's report described the janitorial closet, next to the area where the fire occurred, which contained evidence of liquid contamination of the busway system and liquid contaminates on the busway insulation. Because plaintiff's expert believed that the busway system had experienced contamination from *within* the busway, and that the contamination could not have been introduced from outside the busway, Rush's opinion did not initially concern plaintiff. See Plaintiff's Reply To Defendant's Objection To Plaintiff's Motion To Amend Scheduling Order And Other Motions Including Joining Additional Parties and Dismissal In The Alternative ("Plaintiff's Reply") (Doc. # 51) filed July 23, 2002 at 2. Plaintiff's initial lack of concern has apparently given way to a strategic desire to amend its complaint and join a new defendant, but the reasons for its change of view do not appear on the record.

Plaintiff discounts the significance of Rush's report because it was preliminary, but the report explained that it was preliminary because Rush wanted to inspect the building and two pieces of busway which had not yet been available, and review the depositions of plaintiff's experts. Rush did not suggest that his opinion with regard to external liquid contamination was subject to change and, indeed, his supplemental report did not alter his initial opinion.

Given these circumstances, plaintiff was on notice of defendant's theory, as early as May 16, 2002, that liquids from the janitorial supply closet had contaminated the busway insulation, and that Central Maintenance Systems was responsible for the contamination.

■ Plaintiff is correct that as of May 16, 2002, it could not have met the established deadline of May 1, 2002, for joining additional parties. Plaintiff waited seven weeks, however-until June 25, 2002—to file a motion to amend the relevant schedule and join Central Maintenance Systems. Meanwhile, defendant filed a summary judgment motion on June 3, 2002. The final status conference was scheduled for August 16, 2002 and trial was set for September 17, 2002. Given the late stage in the litigation and the quickly approaching trial date, plaintiff's delay in moving to amend the pretrial order—which includes the relatively major prospect of adding a new party after the conclusion of discovery—cannot be justified. Plaintiff has not demonstrated that amendment of the pretrial order must be allowed to prevent manifest injustice. After it learned of the facts behind its potential claim against Central Maintenance Systems, plaintiff unduly delayed seeking leave to amend. Accordingly, its motion for leave to amend should be overruled. See *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir.1990) (untimeli-

ness alone sufficient to deny leave to amend); see also *Lappin v. Gwartney*, No. 99–2292–KHV, 2000 WL 1532765, at *6 (D.Kan. Sept. 18, 2000) (parties are obligated to reveal factual and legal theories in pretrial order).

Plaintiff argues that its motion is late because of unfortunate circumstances and efforts to accommodate defendant. Plaintiff argues that it delayed destructive testing of the busways so that defense experts could be present, but that the delay forced plaintiff to develop a theory of the case without expert testimony. In addition, earlier versions of the scheduling order allowed plaintiff to add parties after defendant had identified parties with whom it wished to compare fault. Repeated extensions of time did cause delay in the schedule of this case. The fact that defendant sought and received extensions of time is not dispositive, however, and plaintiff waited until the deadlines had passed to attempt to amend the pretrial order and the scheduling order. While the Court cannot find that plaintiff acted in bad faith, it clearly failed to exercise due diligence in the circumstances.

In addition, D. Kan. Rule 15(a) requires that a copy of a proposed amended pleading be filed with a motion to amend. Plaintiff has not complied with this rule or explained its failure to do so. Because plaintiff's motion to amend the complaint is untimely and does not comply with D. Kan. Rule 15(a), it is overruled.

■ Anticipating that the Court might not allow joinder of Central Maintenance Systems, plaintiff in the alternative seeks to dismiss without prejudice. Rule 41(a)(2), Fed.R.Civ.P., controls voluntary dismissals after the opposing party has filed an answer or motion for summary judgment. Under Rule 41(a)(2), "an action shall not be dismissed at the plaintiff's instance save upon order of the court and

upon such terms and conditions as the court deems proper." Thus, a dismissal without prejudice under Rule 41(a)(2) depends on the Court's discretion. See *Am. Nat'l Bank & Trust Co. of Sapulpa v. Bic Corp.*, 931 F.2d 1411, 1412 (10th Cir.1991). "[C]ourts generally allow dismissal without prejudice unless the defendant will suffer some plain legal prejudice." *Wimber v. Dep't Of Soc. & Rehab. Servs.*, 156 F.R.D. 259, 261 (D.Kan.1994); see also *Clark v. Tansy*, 13 F.3d 1407, 1411 (10th Cir.1993). Factors relevant in determining whether defendant would suffer legal prejudice include (1) defendant's efforts and funds expended towards preparing for trial; (2) plaintiff's undue delay or lack of diligence in prosecuting the action; (3) the adequacy of plaintiff's explanation for needing to dismiss; (4) plaintiff's diligence in moving to dismiss; (5) the present stage of litigation; and (5) duplicative expenses involved in a likely second suit. See *Nunez v. IBP, Inc.*, 163 F.R.D. 356, 359 (D.Kan.1995); see also *Clark*, 13 F.3d at 1411. Neither the mere prospect of a second lawsuit against defendant nor a tactical advantage to plaintiff amounts to legal prejudice. See *Am. Nat'l Bank & Trust Co.*, 931 F.2d at 1412. For dismissal to be appropriate, all factors need not be resolved in favor of the moving party; likewise, for dismissal to be inappropriate, all factors need not be resolved in favor of the party opposing it. See *United States v. Outboard Marine Corp.*, 789 F.2d 497, 502 (7th Cir.1986). Further, the factors are not exclusive; they are merely guides for the district court. See *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 357–58 (10th Cir. 1996).

■ As to the first factor, defendant has expended considerable effort and expense in preparing for trial. Defendant has deposed multiple fact witnesses and two expert witnesses, and prepared expert reports, a Daubert motion and a summary judgment motion. This first factor weighs heavily in favor of overruling plaintiff's motion to dismiss without prejudice.

The second factor, plaintiff's undue delay or lack of diligence in prosecuting the action, also weighs in favor of defendant. Plaintiff's motion to dismiss is activated by the Court's decision that it cannot join Central Maintenance Systems-a decision which follows from plaintiff's undue delay in seeking leave to amend and plaintiff's failure to comply with D. Kan. Rule 15(a). Such lack of diligence suggests that dismissal without prejudice should not be permitted.

The third factor, plaintiff's explanation for dismissing its claim, is inadequate and also weighs in favor of defendant. Essentially, plaintiff seeks dismissal to avoid the effect of an adverse ruling on its motion to amend. See *Phillips USA, Inc.*, 77 F.3d at 358 (party not permitted to avoid adverse decision on dispositive motion by dismissing claim without prejudice); *Saviour v. Revco Disc. Drug Ctrs., Inc.*, 126 F.R.D. 569, 571 (D.Kan.1989) (plaintiff not allowed to voluntarily dismiss case after defendant moved for summary judgment).

The fourth factor, diligence in moving to dismiss its claims, weighs in favor of plaintiff. As noted above, plaintiff's motion to dismiss was activated when the Court denied its motion to join Central Maintenance Systems. Plaintiff has demonstrated diligence in staking out its position on the issue.

The present stage of litigation weighs strongly against dismissal without prejudice. This case is on the eve of trial. The parties and the Court have expended considerable judicial resources getting the case to this point. Plaintiff argues that defendant will not incur duplicative expenses in a second suit, but its position is of doubtful merit. Plaintiff wants to pursue this suit in state court, which-because it follows *Frye v. United States,* 293 F.

1013 (D.C.Cir.1923), instead of Daubert, supra-weighs expert testimony under a different and far less stringent standard. See *State v. Isley,* 262 Kan. 281, 286, 936 P.2d 275, 280 (1997) (Kansas utilizes Frye test); *Armstrong v. City Of Wichita,* 21 Kan.App.2d 750, 757, 907 P.2d 923, 929 (1995) (Daubert applies to federal trial judges and not Kansas state courts). Defendant has incurred substantial expense, however, in preparing expert reports under Daubert and submitting a summary judgment motion premised on Daubert. All of defendant's efforts would be for naught if the Court were to allow dismissal without prejudice at this time.

In summary, defendant would suffer legal prejudice if the Court were to dismiss this action without prejudice. The Court therefore overrules plaintiff's motion.

## II. Motion To Exclude Plaintiff's Expert Witnesses

Defendant argues that plaintiff's experts should be prohibited from testifying because (1) their reports do not opine that defendant was negligent or that the busway was defective with regard to warnings or manufacture; and (2) Martin is not qualified to opine about product defects or possible negligence, and his opinion is not scientifically reliable or relevant.

### A. Legal Standard

The Court has broad discretion in deciding whether to admit expert testimony. See *Kieffer v. Weston Land, Inc.,* 90 F.3d 1496, 1499 (10th Cir.1996). Rule 702, Fed.R.Evid., provides that a witness who is qualified by knowledge, skill, experience, training or education may testify in the form of opinion or otherwise as to scientific, technical or other specialized knowledge if such testimony will assist the trier of fact to understand the evidence or to determine a fact in issue, "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of

reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." The touchstone of Rule 702 is helpfulness of the expert testimony, a condition that goes primarily to relevance. See *BioCore, Inc. v. Khosrowshahi,* 183 F.R.D. 695, 699 (D.Kan.1998) (quoting *Miller v. Heaven,* 922 F.Supp. 495, 501 (D.Kan.1996)). Thus, the Court must determine whether the proffered evidence would be helpful to the trier of fact. See *BioCore,* 183 F.R.D. at 699. In so doing, the Court examines specific subject areas of proposed expert testimony to ascertain whether each is sufficiently tied to the facts of the case so that it will be helpful to the fact finder. See *id.* Any doubts should be resolved in favor of admissibility. See *id.*

■ The proponent of expert testimony must show "a grounding in the methods and procedures of science which must be based on actual knowledge and not subjective belief or unaccepted speculation." *Mitchell v. Gencorp., Inc.,* 165 F.3d 778, 780 (10th Cir.1999). In order to determine whether an expert opinion is admissible, the Court performs a two-step analysis. First, the Court must determine whether the expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion. See Fed.R.Evid. 702. Second, if the experts are so qualified, the Court must determine whether their opinions are "reliable" under the principles set forth under *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). In determining whether a particular scientific theory is reliable, the court may consider several nondispositive factors: (1) whether the proffered theory can and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general

acceptance of a methodology in the relevant scientific community. *Daubert,* 509 U.S. at 593–94, 113 S.Ct. 2786.

## B. Analysis

The first issue is whether plaintiff's expert reports are relevant to the issues in the case. As noted above, Martin and Sherman prepared a joint expert report on February 18, 2002. Martin is a licensed engineer with degrees in mechanical engineering and engineering management. Sherman is a professor of electrical engineering at the University of Missouri. In their joint report, the experts concluded that internal overheating in the bus duct "could" have ignited nearby combustible materials, and that the internal heating was "related" to premature deterioration and contamination of the bus bar insulation that allowed internal short circuiting of electrical current. February 18, 2002 Expert Report (Exhibit C) in Defendant's Summary Judgment Motion (Doc. # 30) at S–3. The report also stated that all of their expert findings

> ... point to internal generation of heat within the bus duct section where the external housing had melted. This condition caused damage to the insulation wrapping material and the coatings on the bus bars. This condition is indicative of an internal defect in the insulation wrapping that resulted in premature deterioration and short circuiting of electrons through the bus bar insulation that generated heat. More specifically, the cause of the defect appears to be related to contamination of the insulation wrapping or coating materials.

*Id.* In addition, the experts stated that "examination of the long section of the

busway revealed that metallic particles existed between separations and within the bus bar insulation wrapping." [9] *Id.* at S–2.

On March 25, 2002, Martin prepared his own expert report. Martin's report concluded that "the fire and heat damage ... emanated from the inner bus bars of the bus duct located in the corner of the equipment room." March 25, 2002 Expert Report (Exhibit D) in Defendant's Summary Judgment Motion (Doc. # 30) at S–3. Martin's report also contained the same discussion of contaminates that was in the February 18, 2002 report. It specifically stated that:

> ... some metallic like material existed in the wrapping material predominantly at the location where external heat and burn damage to the bus duct housing had occurred.
>
> The destructive examination revealed that metallic particles existed in the insulation wrapping of the two internal bus bars. Additionally distinguishably different surface conditions and insulation wrap materials existed at the area where external heat damage was apparent versus other surface areas of the bus bars.
>
> All of these findings consistently point to [the] fire's origin emanating from the bus duct. The bus duct was comprised of four bus bars. The inner bus bars depicted melted metallic particles that could have only occurred from internal overheating.

March 25, 2002 Report in Defendant's Exhibits (Doc. # 43) at S–3.

The reports of February 18, 2002 and March 25, 2002 contain no opinions regarding failure to warn, defective design,[10] or

---

**9.** The reports discussed "melted balls of metallic like materials" which were found on the inner wrapping material of the bus bars. *Id.* White and yellow material was also found on the bus bars and "[e]xamination of each individual bus bar indicated various areas where

accumulations of a whitish type material existed." *Id.*

**10.** Martin does not believe that the busway design was defective.

defective manufacture. Similarly, Martin's report of March 25, 2002 does not opine that defendant was negligent, that the busway was defective, or that defendant's warnings were deficient. At the time of his expert reports and deposition, Martin had not personally tested the contaminants and he did not know how or when they entered the busway system or who had allowed them to do so. He believed that the contaminants were probably introduced during manufacture, but he also agreed that they could have entered the system after it was installed.

Under Fed.R.Civ.P. 26(2)(B), an expert who will give testimony in a matter must submit a report that contains "a complete statement of all opinions to be expressed and the basis and reasons therefor." Under Fed.R.Civ.P. 37(c), "[a] party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." See, e.g., *Noel v. Martin*, 21 Fed.Appx. 828, 834 (10th Cir.2001); *Nelson v. Calvin*, No. 01-2021–CM, 2002 WL 1774057, at *5 (D.Kan. July 25, 2002) (expert testimony excluded when not included in Rule 26 report).

Defendant argues that plaintiff's expert reports are silent as to any theory or opinion regarding warnings or design or manufacturing defects and that plaintiff's experts should not be allowed to testify to such theories or opinions at trial. Plaintiff responds that according to the joint report dated February 18, 2002, the busway failed on account of internally generated heat which is "indicative of an internal defect" that "appears to be related to contamination of the insulation wrapping or coating materials." February 18, 2002 Expert Report (Exhibit C) in Defendant's Summary Judgment Motion (Doc. # 30) at S–3. The joint report does claim that contamination

"allowed" internal short circuiting that caused overheating which "could" have ignited nearby combustible materials. Plaintiff's experts offer no theory as to how the contamination occurred, however, and while they opine that overheating "could" have caused nearby combustible materials to ignite, they do not claim that it did so in this case. In short, plaintiff's experts do not theorize that defendant was negligent with respect to design, manufacture, or warnings, or that defendant's negligence was the cause of plaintiff's loss.

In apparent recognition of these deficiencies, plaintiff attaches Martin's supplemental expert report of July 11, 2002—a third report which opines that the contamination inside the busway had to occur during the manufacturing process and that defendant should have attached a warning which alerted users to annually test the busway and keep it free from dirt, water and dust. Specifically, the third report states that:

> The bus bar itself is not defective. Rather the surface blemishes found on the bus bars represent a defect. This surface blemish condition in the bus bar finish or surface coating was initiated when it was manufactured ... [and] any significant surface blemish would have an impact on the performance of the busway section.

> These facts establish that the busway sections provided to the building at the time of construction had isolated locations of non-uniform surface treatment conditions. These non-uniform areas of surface treatment would impact the performance of the bus bar insulation. The bus bar section at the location of the fire indicated that significant internally generated heat occurred between the inner busbars. The cause of the internally generated heat could have only been caused by a short circuit within the bus-

way section. A short circuit within a busway section would be caused by damage to the busbar insulation wrapping material. Damage to the busbar insulation wrapping material would occur from the application or creation of a non-uniform surface blemish.

July 11, 2002 Expert Report (Exhibit A) in Plaintiff's Response To Defendant's Daubert Motion And Motion For Summary Judgment (Doc. # 48) filed July 12, 2002. The third report is untimely: under the second amended scheduling order, plaintiff's initial expert reports were due April 1, 2002 and rebuttal expert reports were due June 1, 2002.[11]

 Plaintiff offers various rationalizations for its delay in submitting its final expert report. All of plaintiff's rationalizations are inadequate, and the Court therefore declines to consider plaintiff's third expert report dated July 11, 2002. See D. Kan. Rule 15.1 (plaintiff must seek leave to file pleading out of time). As a result, plaintiff has no expert testimony regarding any negligence in the manufacturing process or any inadequacy of defendant's warnings. Plaintiff is left with earlier opinions that the busway insulation or coating materials became contaminated and caused overheating which "could" have caused the fire. These opinions do not claim that defendant was negligent in causing the contamination, or even that the contamination caused the fire. Plaintiff's expert testimony is therefore irrelevant to the issue of liability. Moreover, any probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or mis-

leading the jury. Therefore the Court will exclude it. See Fed.R.Evid. 403; see also *Messer v. Amway Corp.*, 210 F.Supp.2d 1217, 1240–41 (D.Kan.2002) (expert testimony excluded when it confuses issues or misleads jury).

### III. Summary Judgment

Defendant argues that it is entitled to summary judgment because plaintiff has no admissible expert testimony to support its claims of manufacturing and warning defects. Aside from plaintiff's assertion that its expert testimony is admissible, plaintiff does not respond to this argument.

**A. Legal Standard** Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); accord *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City Of*

11. Defendant later received an extension of time, to June 14, 2002, to submit final expert reports. Therefore plaintiff could not submit a rebuttal report by June 1, 2002. Plaintiff did not seek an extension of time to submit a rebuttal report, however, and in fact the report of July 11, 2002 does not "rebut" defendant's expert report. Plaintiff does not even argue that it is a rebuttal report. The report supplements plaintiff's initial expert reports by advancing a totally new theory of negligence: that the contamination which "could" have ignited the fire occurred inside-rather than outside-the busway and was introduced in the manufacturing process.

*Watonga, Okla.,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); see also *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing summary judgment. See *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. See *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

■ **B. Analysis** Plaintiff premises its claims on a theory of products liability. The Kansas Product Liability Act ("KPLA"), K.S.A. §§ 60–3301 to 60–3307, applies to all product liability claims regardless of the substantive theory of recovery. See *Savina v. Sterling Drug, Inc.,* 247 Kan. 105, 126, 795 P.2d 915 (1990).

Kansas law recognizes three ways in which a product may be defective: (1) a manufacturing defect; (2) a warning defect; and (3) a design defect. See *id.* at 127, 795 P.2d at 931. Plaintiff asserts that defendant is liable for manufacturing and warning defects.

■ To establish a prima facie product liability case under any of these theories, plaintiff must produce evidence to establish three elements: "(1) the injury resulted from a condition of the product; (2) the condition was an unreasonably dangerous one; and (3) the condition existed at the time it left the defendant's control." *Jenkins v. Amchem Prods., Inc.,* 256 Kan. 602, 630, 886 P.2d 869, 886 (1994). Regardless of the theory on which recovery is sought for injury in a products liability case, proof that a product defect caused the injury is a prerequisite to recovery under Kansas law. See *Wilcheck v. Doonan Truck & Equip., Inc.,* 220 Kan. 230, 235, 552 P.2d 938, 942 (1976); *Samarah,* 70 F.Supp.2d at 1202. As defendant notes, plaintiff has no expert testimony on this point. Plaintiff does not assert that it can survive summary judgment on account of other record evidence. For this reason, defendant is entitled to summary judgment.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion For Leave To Amend Scheduling Order, Amend Complaint, To Join Additional Party Defendant, Stay Pending Discovery, And Remand Case To State Court, Or In The Alternative Dismiss Without Prejudice (Doc. # 41) filed June 25, 2002 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that Defendant's Motion To Exclude The Testimony Of Plaintiff's Experts Carl Martin and Byron W. Sherman And Corresponding Motion For Summary Judgment (Doc.

# 30) filed June 3, 2002 be and hereby is **SUSTAINED.**