**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 23 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

103 INVESTORS I, L.P.,

    Plaintiff - Appellant,

v.

    No. 02-3345

SQUARE D COMPANY,

    Defendant - Appellee.

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 01-2504-KHV)

Michael A. Childs, Brown and James, P.C., Kansas City, Missouri for the
Plaintiff-Appellant.

James S. Kreamer (Thomas N. Sterchi and Christopher J.Stucky with him on the
brief) Baker, Sterchi, Cowden, & Rice, L.L.C., Overland Park, Kansas for the
Defendant-Appellee.

Before **EBEL, MCKAY**, and **LUCERO**, Circuit Judges.

**LUCERO**, Circuit Judge.

At the heart of this appeal is a dispute over the admissibility of expert

testimony in relation to the cause of a fire that occurred in the building of 103

Investors I, L.P. ("Investors") on March 1, 2001. Square D Company ("Square

D"), which manufactures electrical equipment, manufactured the building's busways. Investors alleges that those busways caused the fire and seeks to introduce expert testimony toward the goal of demonstrating that allegation.

Late in the discovery process, Investors attempted to add an additional party or, in the alternative, voluntarily dismiss the suit without prejudice. The district court denied both motions, and we **AFFIRM** on both issues. Having denied those motions, the district court granted summary judgment to Square D on the ground that Investors lacked admissible expert testimony that would demonstrate a manufacturing defect was present in the busways. Specifically, it found that Investors' initial expert reports were inadmissible under Daubert v. Merrill Dow Pharmaceuticals, Inc. , 509 U.S. 579 (1993), and that its subsequent report was untimely. We conclude that the district court's refusal to consider Investors' subsequent expert report was an abuse of discretion; accordingly, we **REVERSE** and **REMAND** for proceedings consistent with this opinion.

**I**

On March 1, 2001, a fire occurred in the electrical room on the second floor of Investors' office building. In the walls ran "busways," which are systems of four insulated aluminum bars in aluminum casing that run from the basement to the top floor and distribute electricity to various floors. Square D manufactured the busways, while another company installed them in 1978. During the months

following the fire, Investors retained Carl Martin and Bryon Sherman as experts to investigate possible causes. Based on their analyses, Investors ultimately attributed the cause of the fire to a malfunction of the busways. Accordingly, it brought an action against Square D in state court on September 19, 2001, asserting theories of strict liability and negligence based on design defects, manufacturing defects, and failure to warn. Square D removed the case to federal court on October 18, 2001.

A detailed description of the discovery process is necessary to provide an understanding of the context of the present appeal. After conducting a scheduling conference, the district court issued a Scheduling Order on December 7, 2001. Among other things, the Scheduling Order set the following dates by which certain motions had to be filed and portions of discovery had to be completed: (1) Investors' submission of expert reports by January 10, 2002; (2) Square D's expert submissions by February 11, 2002; (3) any rebuttal expert reports by February 25, 2002; (4) motions to join additional parties by February 15, 2002; (5) potentially dispositive motions by May 3, 2002; and (6) all discovery completed by April 8, 2002.

These dates all changed, at the initial request of Square D and ultimately with the agreement of Investors. On April 4, 2002, the district court issued an Amended Scheduling Order, which set out the following revised dates: (1)

Investors' submission of expert reports by April 1, 2002; (2) Square D's expert submissions by May 15, 2002; (3) any rebuttal expert reports by June 1, 2002; (4) motions to join additional parties by May 1, 2002; (5) potentially dispositive motions by June 3, 2002; and (6) all discovery completed by July 5, 2002.

Investors initially submitted two expert reports, one prepared on February 18, 2002, jointly by Martin and Sherman and the other prepared on March 25, 2002, by Martin. Under the Amended Scheduling Report, Investors' reports were timely, and Square D had over a month remaining to file its expert reports. Square D instead filed for another extension. On May 20, 2002, the district court granted Square D's motion to extend the deadline for its expert filings to June 14, 2002. Notably, the district court's order changed none of the other dates. Thus, all dates other than the date on which Square D's expert reports were due remained governed by the April 4 Amended Scheduling Order.

On June 3, 2002 (the due date for dispositive motions under the Amended Scheduling Order), Square D moved for summary judgment, alleging that Investors lacked any admissible expert testimony or other evidence to establish liability. In accordance with the most recent time extension that it had received, on June 14, 2002, Square D filed its expert witness report. In response to Square D's June 3 motion for summary judgment, on June 25, 2002, Investors filed an extensive motion requesting the following: (1) leave to amend the scheduling

-4-

order; (2) leave to amend its complaint to join an additional party defendant; and (3) in the alternative, voluntary dismissal of its complaint without prejudice. On July 11, 2002, Investors submitted a third expert report, in which it attempts to rebut Square D's expert report.

In a Memorandum and Order of September 2, 2002, the district court denied Investors' procedural motions and granted summary judgment to Square D. In so doing, the district court refused to consider Investors' July 11, 2002, expert report, explaining that it was untimely and that it espoused a "totally new theory of negligence." 103 Investors I, L.P. v. Square D Company, No. 01-2504-KHV, at 18, 19 n. 10 (D. Kan. Sept. 4, 2002). Investors appealed, asserting inter alia the following claims of district court error: (1) the exclusion of the July 11, 2002 expert report; (2) the decision to grant Square D's Daubert and summary judgment motions; (3) the refusal to allow Investors to amend its pleadings and add a party; and (4) the refusal to allow Investors to voluntarily dismiss its suit against Square D.

## II

We allow a district court substantial latitude in its management of the discovery process, particularly in the context of our review of a decision to sanction the parties before it. Summers v. Missouri Pac. R.R. Sys., 132 F.3d 599,

604 (10th Cir. 1997).  Our standard of review is abuse of discretion.     [1]  Id.

The analytical process of the district court instructs our consideration of its decision to grant summary judgment to Square D.  In granting summary judgment to Square D, the district court reasoned as follows, each decision depending on the one preceding it:  (1) it refused to consider Investors' July 11 expert report on the basis of its untimeliness; (2) citing its unwillingness to consider that report, it granted Square D's   Daubert  motion; and (3) there being no expert testimony remaining, it granted Square D's motion for summary judgment.  That is to say, the court's summary judgment grant was dependent on its decision to grant the Daubert motion, and the decision to grant the     Daubert  motion was similarly dependent on the court's refusal to consider Investors' rebuttal expert report. Therefore, our initial task is to examine whether the district court's exclusion of the expert report of July 11, 2002 constituted an abuse of discretion.

Explaining its exclusion of the report, the district court stated that "[t]he third report is untimely: under the second amended scheduling order, plaintiff's initial expert reports were due April 1, 2002 and rebuttal expert reports were due June 1, 2002."   103 Investors I  , No. 01-2504-KHV   at 18-19.  It also expressed the

_____

[1]  The district court's exclusion of Investors' July 11 report was a sanction for untimeliness, not a finding that the report did not survive a Daubert inquiry. Accordingly, our analysis need not consider whether the district court should have included the report under the standards of Daubert.

-6-

concern that the July 11 report expressed totally new theories from those asserted in the previous two reports.

The district court is correct that Investors' July 11 report was technically untimely. After all, the latest set of deadlines set out in the Amended Scheduling Order required that expert reports be submitted by June 1, 2002. However, as outlined above, the district court twice granted Square D extensions of time to file its expert reports. First, the district court amended the Scheduling Order, allowing Square D to submit its motions on May 15 rather than February 11. Subsequently, although Investors complied with the deadlines set forth in the Amended Scheduling Order, Square D filed for an additional extension of the date by which its reports were due. In its Second Amended Scheduling Order, the district court granted Square D's request, this time allowing Square D until June 14, 2002 to submit its expert reports. [2]

What is most notable about the Second Amended Scheduling Order, however, is the change that it did not make to the discovery dates. Specifically, while the Second Amended Scheduling Order extended Square D's deadline for filing its expert reports from May 15, 2002 to June 14, 2002, it did not grant a parallel extension to Investors to file a rebuttal expert report. It is not apparent

---

[2] Though the district court simply labeled this document "Order," we will refer to it as "Second Amended Scheduling Order."

from the record why such a change was not implemented in the Second Amended Scheduling Order.

Both the Scheduling Order and Amended Scheduling Order include a provision which addresses the need to allow Investors time to file a rebuttal expert report. Once the district court filed its Second Amended Scheduling Order, however, Investors' rebuttal reports remained due on June 1 while Square D's reports were not due until June 14. We see no reason why the Second Amended Scheduling Order should have created a situation in which Investors' rebuttal reports would be due prior to the deadline for Square D's initial expert reports. Such a scenario would put Investors in the impossible situation of attempting to rebut something that it had not yet seen.

The district court appears to recognize the quandary in which the Second Amended Scheduling Report placed Investors; indeed, it states in its Memorandum and Order that "plaintiff could not submit a rebuttal report by June 1, 2002," 103 Investors I , No. 01-2504-KHV at 19, but the court ultimately reaches the conclusion that "[a]ll of plaintiff's rationalizations [for submitting the report on July 11] are inadequate, and the Court therefore declines to consider plaintiff's third expert report." Id.

We take a different view of the matter. The plaintiff's rationalization for the untimeliness of its filed report appears to us to be perfectly adequate; quite

-8-

simply, Investors could not have been expected to file a rebuttal expert report prior to the report it sought to rebut. Moreover, though the district court was concerned that its allowance of Investors' July 11 expert report would amount to a modification of its pretrial order, we have previously concluded that "while the pretrial order defines a lawsuit's boundaries in the trial court and on appeal, total inflexibility is undesirable." Summers, 132 F.3d at 604 (citations and quotations omitted). We conclude, therefore, that it was an abuse of discretion for the district court to refuse to consider the July 11 report as untimely.

Untimeliness was not the only possible ground on which the district court could have excluded the July 11 report; the Federal Rules of Civil Procedure require that a "report [] contain a complete statement of all opinions to be expressed and the basis and reasons therefore." Fed. R. Civ. P. 26(a)(2)(B). Possible sanctions for a violation of Rule 26(a)(2)(B)'s disclosure requirements include exclusion of the undisclosed information. See Fed. R. Civ. P. 37(c). Along these lines, the district court seems to partially ground its exclusion of the July 11 report in its finding that the report was not a rebuttal report, but rather advanced "a totally new theory of negligence: that the contamination which 'could' have ignited the fire occurred inside—rather than outside—the busway and was introduced in the manufacturing process." 103 Investors I, No. 01-2504-KHV, at 19 n. 10. After examining the record and Investors' three expert reports,

however, we disagree with the district court's conclusion on this point.

Investors initially submitted two expert reports, one prepared on February 18, 2002, jointly by Martin and Sherman and the other prepared on March 25, 2002, by Martin. In their joint report, Martin and Sherman conclude that "heat emanated from within the bus duct section and that the bus bars had distorted and bowed within the duct casing." (Appellant's App. at 363.) Explaining the importance of that observation, the report states that "[t]his condition would be indicative of an internal malfunction that generated heat and could ignite surrounding combustible material resulting in a fire" and explains further that "the cause of the defect appears to be related to contamination of the insulation wrapping or coating materials." Id. Though the report never explicitly opines on whether the heat emanation was the result of a manufacturing defect per se, it explains that the condition was "indicative of an internal defect in the insulation wrapping that resulted in premature deterioration and short circuiting of electrons through the bus bar insulation that generated heat." Id. Thus, while the first two expert reports did not specifically mention the phrase "manufacturing defect," the opinions contained in the reports indicate that such a defect is the thrust of the experts' analysis.

Square D filed its initial expert report on June 14, 2002. The report essentially theorizes that the contamination on the bus ducts which led to the fire

had entered the bus ducts from an outside source and was not due to a manufacturing defect. Specifically, Square D's report opines:

> The 'contamination' that may have deteriorated or reduced the resistance of the insulation on the bus bars is probably a result of infiltration of water and chemicals. There is evidence of water and chemical penetration into the electrical equipment room on floors above the fire floor. The bus duct is installed indoors and is not protected from such penetration.

(Appellant's App. at 172–73.)

After receiving Square D's initial expert report, Investors filed its rebuttal report on July 11, 2002. On our review of that report, it is clear that its main thrust was to rebut Square D's expert assertions that the contaminants came from an outside source. To that end, the July 11 report states:

> [G]iven the actual location of the short circuit in the bus duct, contamination from a foreign liquid material is not a reasonable possibility. Additionally, the possibility and theory that moisture may have somehow penetrated the three separate bus bar insulation wraps was tested. This revealed that water or a liquid could not penetrate the bus bar wraps, thus further demonstrating that the contaminant conditions were generated during the manufacturing process.

(Appellant's App. at 357.) Although the opinions in the third expert report are otherwise similar to those of the first two reports submitted by Investors, the third report opines more directly that the contamination inside the busway must have occurred during the manufacturing process.

While we are sympathetic to the district court's concerns that no new

-11-

theories be introduced at such a late stage of the discovery process, our review of the expert reports filed by Investors and Square D convinces us that in this case, the July 11 expert report did not espouse a new theory. The reports of February and March discussed the internal defects and contamination on the inner bus ducts, and merely labeling the cause more specifically as a manufacturing defect does not represent a new theory in violation of Rule 26.

Accordingly, we conclude that it was an abuse of discretion for the district court to refuse to consider the July 11 report and **REVERSE** the district court's exclusion of that report. In light of our holding that the exclusion of the third expert report represented an abuse of discretion and the district court's reliance on that decision to exclude the first two expert reports, we also **REVERSE** the district court's exclusion of the first two expert reports. Because the decision to grant summary judgment was premised upon its exclusion of the expert reports, we **REVERSE** the district court's decision to grant summary judgment and **REMAND** for proceedings consistent with this opinion.

### III

Investors also contends that the district court erred in refusing to permit it to join an additional party and refusing to allow it to voluntarily dismiss its case under Fed. R. Civ. P. 41(a)(2). Our review of a district court's decision to permit or deny joinder of an additional party, Rishell v. Jane Phillips Episcopal Mem'l

Med. Ctr., 94 F.3d 1407, 1410–11 (10th Cir. 1996), and to deny voluntary dismissal under Fed. R. Civ. P. 41(a)(2) is for abuse of discretion, Phillips USA, Inc. v. Allflex USA, Inc., 77 F.3d 354, 357 (10th Cir. 1996). Our review of the record convinces us that the district court did not abuse its discretion in denying either of these motions; accordingly, we **AFFIRM** the district court on these two issues.

**IV**

For the foregoing reasons, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** for proceedings consistent with this opinion.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge