FILED
United States Court of Appeals
Tenth Circuit

February 18, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PATRICIA CHAVEZ-RODRIGUEZ,

Plaintiff - Appellee,

v.

CITY OF SANTA FE,

Defendant,

and

MAYOR DAVID COSS, in his official and individual capacity; COUNCILOR KAREN HELDMEYER, in her official and individual capacity; JOHN B. "JACK" HIATT, in his official and individual capacity,

Defendants - Appellants.

No. 09-2047

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 1:07-CV-00633-JB-DJS)**

---

Robyn Hoffman (Stephen G. French with her on the briefs), French & Associates, P.C., Albuquerque, New Mexico, for Defendants-Appellants.

Aimee S. Bevan (Daniel J. O'Friel and Pierre Levy with her on the brief), O'Friel and Levy, P.C., Santa Fe, New Mexico, for Plaintiff-Appellee.

---

Before **MURPHY**, **BALDOCK**, and **HARTZ**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I. Introduction

Plaintiff Patricia Chavez-Rodriguez filed this 42 U.S.C. § 1983 action alleging, in part, that Defendants David Coss, Karen Heldmeyer, and John Hiatt (collectively "Defendants") retaliated against her in violation of her First Amendment rights while she was employed by the City of Santa Fe, New Mexico.[1] Chavez-Rodriguez's First Amendment claim was based on a variety of statements she made to city, state, and federal officials, as well as a conversation she had with Ben Lujan, Speaker of the New Mexico House of Representatives. After removing the case to federal district court, the Defendants moved for judgment on the pleadings as to Chavez-Rodriguez's First Amendment claim, arguing none of the speech in question was constitutionally protected. The district court granted the motion in part and denied it in part, concluding that while most of Chavez-Rodriguez's speech was not protected, her discussion with Lujan was. Defendants then sought summary judgment on qualified immunity grounds as to the remaining component of Chavez-Rodriguez's First Amendment claim. The district court denied this motion.

---

[1]The City of Santa Fe was also named as a defendant in the complaint. The district court dismissed all municipal liability claims against the City, and the City is not a party to this appeal.

-2-

In this interlocutory appeal, Defendants challenge the district court's denial of qualified immunity. This court now **REVERSES** and **REMANDS** to the district court to enter judgment in favor of Defendants on this aspect of Chavez-Rodriguez's First Amendment claim.

## II. Background

Chavez-Rodriguez became the Director of the City of Santa Fe's Division of Senior Services ("the Division") in 2004. The Division provides support, including meals, transportation, and health care services, to elderly residents living in the City and County of Santa Fe, New Mexico. The Division's budget is funded by a number of sources, including the City and County of Santa Fe, the State of New Mexico, and the federal government. In addition to administering senior services programs, Chavez-Rodriguez's job description requires that she "ensure[] compliance with relevant state, federal, and city laws and regulations" and "report[] to funding sources and to the city governing body regarding progress and concerns."

In 2005, the city proposed changes to the Division's budget, including cutting certain funding for food services and transferring federal funds from the Division's budget. Chavez-Rodriguez opposed these changes because of their effect on the Division's ability to provide services and because she believed the proposed reallocation of funds violated federal law. She publicly voiced her concerns to various city councilors. According to Chavez-Rodriguez, her actions

angered two city councilors in particular: Defendants David Coss and Karen Heldmeyer. Nonetheless, she continued to voice her concerns to individual city councilors and at least one federal official.

On May 25, 2005, the Division hosted a Volunteer Appreciation Banquet to honor senior volunteers. Chavez-Rodriguez attended in her role as Director, served as "Mistress of Ceremonies," and gave welcoming remarks. The banquet was held during work hours and her attendance was part of her job responsibilities. Nine state representatives were invited to attend as well, including Ben Lujan, one of Chavez-Rodriguez's longtime family friends and Speaker of the New Mexico House of Representatives. Lujan also gave a greeting at the event.

Chavez-Rodriguez sat at the head table with Lujan. At one point, Lujan asked Chavez-Rodriguez how she was doing. In her deposition, she described the conversation as follows:

> And while we're having lunch during the banquet, the Speaker of the House asked me, out of concern, if—he said, Patricia, how are you doing? Fine. I've known the Speaker for many, many years. We are family friends. And he asked me, is everything okay? Is there anything that I can help with?
>
> And I said, well, you know, Mr. Speaker, I'm really, really, really concerned because—I'm worried that the program is in jeopardy of being dismantled as it—you know, as it has existed for over 25 years. I'm really, really, really worried about the funding. I'm worried that I'm having to reduce staff hours. I'm worried that money has been cut from the food line item.

> And he told me, if there's anything, anything I can do, I would be more than happy to do so. He said, I am very, very concerned about these programs. He said, I was originally—I was one of the original founders, if you will, of senior programs. Seniors are true and dear to my heart. They are my constituents. And their well-being is of my utmost importance. That's why I'm here today at this banquet. And if I need to, Patricia, I'll talk to the Mayor. I will talk to Mike, who was the City Manager at the time, to see if there's anything that I can do.

In an affidavit, Chavez-Rodriguez further explained she

> told the Speaker of the New Mexico House[,] Ben Lujan, the City budget cuts would place the City of Santa Fe out of compliance with Federal law, and would jeopardize the health and welfare of senior citizens of northern New Mexico.

Chavez-Rodriguez claims her conversation with Lujan, along with her general opposition to the budget cuts, angered Coss and Heldmeyer. Ultimately, the Director of the Corporation for National and Community Service[2] determined the budget transfers were a violation of the Older Americans Act, and the City restored the funds.

In March 2006, Coss was elected Mayor of Santa Fe. Thereafter, Chavez-Rodriguez claims she was retaliated against for several months due to her opposition to the budget decisions, including her discussion with Lujan. On January 19, 2007, Assistant City Manager Jack Hiatt informed Chavez-Rodriguez she was being removed from her position as Director of Senior Services and

---

[2]The Corporation for National and Community Service "is an independent federal agency that administers and dispenses federal grant funds to support local programs fostering volunteer and community service activities." *United States v. Williams*, 527 F.3d 1235, 1238 (11th Cir. 2008).

would be reassigned to a low-level position with a local community center. However, Chavez-Rodriguez was later reinstated as Director of the Division.

Chavez-Rodriguez initially filed the instant action in New Mexico state court against the City of Santa Fe, Coss, Heldmeyer, and Hiatt. The complaint included four counts: (1) retaliation in violation of her First Amendment rights, (2) violation of her federal and state right to due process, (3) assault under state law, and (4) recovery of attorney's fees and costs. Chavez-Rodriguez's First Amendment claims related not only to her conversation with Lujan, but also her public opposition to the budget cuts and her direct contact with individual city councilors and federal officials on the subject.

Defendants removed the action to the United States District Court for the District of New Mexico. Defendants then filed a motion for judgment on the pleadings, which the district court granted in part and denied in part, determining most of the incidents of speech at issue were not protected under the First Amendment because they were undertaken pursuant to Chavez-Rodriguez's official duties. However, the district court denied the motion as to Chavez-Rodriguez's claim of retaliation for her conversation with Lujan, determining those statements were made as a private citizen and are, therefore, entitled to First Amendment protection.[3]

_____

[3]In a separate order, the district court also dismissed Chavez-Rodriguez's federal due process claims along with all municipal liability claims against the

(continued...)

Defendants then filed a motion for summary judgment claiming entitlement to qualified immunity. In its order, the district court reiterated its prior ruling that Chavez-Rodriguez's conversation with Lujan constituted protected speech. The court also determined it was clearly established that retaliating against a public employee for protected speech is unconstitutional. Consequently, the motion was denied.

Defendants filed this appeal seeking review of the district court's denial of qualified immunity. Though the denial of a motion for summary judgment is not typically an appealable final order, this court has appellate jurisdiction when the district court denies qualified immunity. *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009). However, this court's review in such circumstances is limited to the district court's legal conclusions. *Id.*

## III. Discussion

This court reviews a district court's denial of qualified immunity de novo, following the same standards used by the district court. *Casey v. West Las Vegas Ind. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007). When a defendant asserts qualified immunity in a motion for summary judgment, the burden shifts to the plaintiff who must satisfy a heavy two-part burden. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007) (quotation omitted).

[3](...continued)
City of Santa Fe. Chavez-Rodriguez's assault claim against Hiatt remains pending before the district court.

The plaintiff must show the defendant's conduct violated a constitutional right, and the right was clearly established at the time of the defendant's conduct. *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009). Though it is often helpful, the court need not resolve the inquiry in this particular order. *Id.* at 818.

Here, the court opts to proceed with the constitutional inquiry first. In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Supreme Court made clear a governmental employer may restrict speech made pursuant to an employee's official duties. In light of *Garcetti*, the Tenth Circuit employs a five-step inquiry for First Amendment retaliation claims. First, the court asks "whether the employee speaks pursuant to his official duties." *Brammer-Hoelter,* 492 F.3d at 1202 (quotation omitted). If an employee speaks as a citizen rather than pursuant to his official duties, the court must determine "whether the subject of the speech is a matter of public concern." *Id.* If so, the court must decide "whether the employee's interest in commenting on the issue outweighs the interest of the state as employer." *Id.* at 1203 (quotation omitted). Assuming this is the case, the employee must show his speech was a "substantial factor or a motivating factor in a detrimental employment decision." *Id.* (quotation and alteration omitted). If the employee makes this showing, the employer must then establish it would have taken the same action even if the speech had not occurred. *Id.*

In this circuit, the first three inquiries are resolved by the court, whereas the final two are generally determined by the trier of fact. *Id.*; *see Hesse v. Town*

*of Jackson, Wyo.*, 541 F.3d 1240, 1249 (10th Cir. 2008) ("The determination of whether a public employee speaks pursuant to official duties is a matter of law."). When reviewing a pretrial denial of qualified immunity, this court construes the evidence in the light most favorable to the non-moving party to determine whether the employee spoke pursuant to her official duties. *Hesse*, 541 F.3d at 1249; *Brammer-Hoelter*, 492 F.3d at 1204; *Green v. Bd. of County Comm'rs*, 472 F.3d 794, 799 (10th Cir. 2007).

The primary issue here is whether Chavez-Rodriguez's speech at the banquet was pursuant to her official duties. There are no bright line rules to make this determination. Instead, the court "take[s] a practical view of all the facts and circumstances surrounding the speech and the employment relationship." *Brammer-Hoelter*, 492 F.3d at 1204. Additionally, this court's precedents have "taken a broad view of the meaning of speech that is pursuant to an employee's official duties." *Thomas v. City of Blanchard*, 548 F.3d 1317, 1324 (10th Cir. 2008) (quotation omitted). This court has further emphasized that no one factor is dispositive. The guiding principle is that speech is made pursuant to official duties if it involves "the type of activities that [the employee] was paid to do." *Green*, 472 F.3d at 801. Stated another way, "if an employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties." *Brammer-Hoelter*,

492 F.3d at 1203. Consequently, an employee's job description is not dispositive and a statement may be made pursuant to one's official duties even though it addresses "an unusual aspect of an employee's job that is not part of his everyday functions." *Id.* On the other hand, speech may be entitled to constitutional protection even when it is made at work about work. *Garcetti*, 547 U.S. at 420-21; *Brammer-Hoelter*, 492 F.3d at 1204. Accordingly, this court closely examines the specific circumstances in each case to determine whether the speech in question was made pursuant to an employee's official duties.

Having considered the content of Chavez-Rodriguez's speech, the context in which it was made, and Chavez-Rodriguez's job duties, the court concludes her statements to Lujan were made pursuant to her official duties. Chavez-Rodriguez's speech occurred at an event sponsored by the Division of Senior Services. The banquet was held during work hours, and she attended in her capacity as Director of the Division. Likewise, Lujan attended in his capacity as Speaker of the New Mexico House of Representatives. Therefore, both participants to the conversation were present at the banquet by virtue of their governmental roles.

While this alone would be insufficient to establish Chavez-Rodriguez's statements are not entitled to First Amendment protection, the content of the speech strongly suggests Chavez-Rodriguez was communicating with Lujan pursuant to her employment duties. Even though the banquet setting was

informal, her statements put Lujan on notice that without his assistance the Division would lose funding that would limit its ability to provide services. It appears Lujan himself so understood Chavez-Rodriguez's statements, as he immediately offered to speak with various city officials to address the Division's funding situation. The content of the speech indicates the conversation was more akin to a work discussion between two public officials than small talk at a party. By voicing her budgeting concerns to Lujan, a powerful New Mexico state official, Chavez-Rodriguez was engaging in speech that "contribute[d] to or facilitate[d]" her performance as Director. *Brammer-Hoelter*, 492 F.3d at 1203.

Chavez-Rodriguez relies heavily on her relationship with Lujan. Specifically, she argues her discussion with Lujan was more like a conversation between two family friends than an employment activity. While the personal relationship between the employee and her audience is a factor this court considers, the court must also be cognizant of the full context in which the speech occurs. Indeed, if the existence of a personal relationship itself was dispositive, no effect would be given to the employer's "heightened interests in controlling speech made by an employee in . . . her professional capacity." *Garcetti*, 547 U.S. at 422. Here, Chavez-Rodriguez stated her concerns about her employment—the Division's budget cuts—while participating in a work event, for which both she and Lujan were present due only to their respective positions. Even though Chavez-Rodriguez was Lujan's friend, the court must balance their

-11-

personal relationship with the governmental capacity in which both attended. Likewise, Lujan's question, "How are you doing?" does not convert the conversation to a private matter between friends because Chavez-Rodriguez chose to respond by engaging in a work-related discussion. In light of the specific circumstances surrounding the conversation, the personal relationship between the two does not so overwhelm the work-related nature of the discussion so as to convert the conversation to private speech.

Chavez-Rodriguez also argues her conversation with Lujan must constitute private speech because Lujan is not within her chain of command and she had no duty to report directly to him. As Chavez-Rodriguez notes, the Tenth Circuit has determined that this factor is relevant in at least two cases. In *Casey v. West Las Vegas Indep. Sch. Dist.*, Casey served as a school district superintendent as well as CEO of the district's Head Start program. 473 F.3d at 1325. When she discovered many of the families participating in the program had misrepresented their incomes to obtain eligibility, she informed the school board. *Id.* at 1326. When her concerns were ignored, Casey directed a subordinate to contact the federal Head Start office and report her findings. *Id.* This resulted in a loss of federal funding. *Id.* During the same time period, she informed the school board she believed they were violating the New Mexico Open Meetings Act. *Id.* Again, when the school board did not respond to her concerns, she contacted outside authorities. *Id.* The New Mexico Attorney General's Office investigated and

determined the school board had violated the Act.  *Id.*  Soon afterward, Casey was

demoted.  *Id.* at 1327.  In response, she sued the school district alleging

retaliation for exercising her First Amendment rights.  *Id.* at 1325.

With respect to her speech regarding the Head Start program, this court

noted she went outside the chain of command.  *Id.* at 1329.  Nonetheless, the

court determined her speech was not protected because she had a duty as

executive director of the school district's Head Start program to report

noncompliance with federal regulations.  *Id.* at 1330-31.  This court also

considered it relevant she went outside her chain of command when reporting

violations of the Open Meetings Act.  This factor too was not dispositive and

simply informed the conclusion that Casey was not fulfilling any work-related

duty when she contacted the Attorney General's Office.  *Id.* at 1332.  Indeed, the

court noted:

> Of course, Ms. Casey also took her complaints about the Head Start
> program to outside authorities.  But, very much unlike the
> administration of the Head Start program that the Board committed to
> her care and pursuant to which she had independent responsibilities
> to the federal government, we have no evidence in the summary
> judgment record before us suggesting that the Board or any other
> legal authority ever assigned Ms. Casey responsibility for the
> Board's meeting practices.

*Id.*  Thus, the court's focus remained on the specific nature of the plaintiff's job

responsibilities.  That *Casey* reached different results on the Head Start and Open

Meetings Act claims makes it clear that going beyond the chain of command is

merely one factor suggesting, under certain circumstances, that an employee's speech is not job-related. It does not, however, control the inquiry.

Chavez-Rodriguez also points to *Thomas v. City of Blanchard*. There, this court held that a city building inspector's report to law enforcement regarding the mayor's falsification of a building certificate constituted protected speech. 548 F.3d at 1326. The court noted, "The fact that Mr. Thomas threatened to go outside his usual chain of command and report on suspected criminal activity to [law enforcement], and not merely to his supervisors . . . , leads us to believe that he was not acting pursuant to his official duties." *Id.* at 1325. The court went on, however, to explain that reporting conduct to outside authorities "was not the type of activity Mr. Thomas was paid to do," and his position as building inspector imposed no underlying legal obligation to report the wrongdoing. *Id.* Thus, the court's precedents provide that whether an employee's speech was made outside the chain of command merely helps inform the court as to whether the speech was made pursuant to one's employment. Neither *Casey* nor *Thomas* establish a per se rule that speaking outside the chain of command is protected.

In any case, "even if not explicitly required as part of her day-to-day job responsibilities," an employee's statements are made pursuant to official duties when they "stemmed from and were the type of activities that she was paid to do." *Green*, 472 F.3d at 800-01. Chavez-Rodriguez's speech at the banquet can be likened to lobbying a government official to support the Division's needs and

-14-

concerns in light of the budget crisis. Even if not an explicit job requirement, the record indicates the discussion with Lujan stemmed from Chavez-Rodriguez's duties as Director and were of the type she was paid to perform.[4] Moreover, Chavez-Rodriguez's responsibilities as Director did include communicating with funding sources regarding the progress and performance of the Division. The district court noted that the State of New Mexico is one of the Division's funding sources. While Chavez-Rodriguez's statements to an individual legislator cannot be likened to a formal report to the State, Lujan's high-ranking position placed him in a position to influence the situation in light of Chavez-Rodriguez's concerns. Thus, even though Chavez-Rodriguez may have been stepping outside the chain of command when speaking with Lujan, the nature of the conversation indicates the speech was not undertaken as a private citizen, but rather in Chavez-Rodriguez's role as the Director.

Given all of the circumstances surrounding Chavez-Rodriguez's conversation with Lujan, the court concludes the speech in question was undertaken pursuant to Chavez-Rodriguez's official duties and not as a private citizen. As a result, this speech is not entitled to First Amendment protection and the Defendants are entitled to qualified immunity.

---

[4]It is also noteworthy that Chavez-Rodriguez's predecessor, Rita Maes, stated in an affidavit that when she served as Director, it was policy to invite state legislators to the banquet specifically so the Director would have an opportunity to lobby for funding.

## IV. Conclusion

For the foregoing reasons, this court **REVERSES** the district court's denial of the Defendants' motion for summary judgment because the Defendants are entitled to qualified immunity. The court **REMANDS** this case to the district court with instructions to enter judgment as a matter of law in the Defendants' favor with respect to the First Amendment claim stemming from Chavez-Rodriguez's conversation with Lujan at the Division's banquet.