BRISCOE, Circuit Judge, concurring.
I agree with Judge Matheson that "Knopf did not meet his burden of showing that any violation of the First Amendment he may have suffered was based on clearly established law." Maj. Op. at 946. But I also conclude, as a preliminary matter, that Knopf failed to establish that defendant Williams violated his First Amendment rights by declining to reappoint him. And, because the analysis of these two questions is so intertwined in this case, I find it useful to address both of them.
I
Standard of review
"[W]e review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions." Bowling v. Rector, 584 F.3d 956, 964 (10th Cir. 2009) (quotation marks omitted). "Upon the defendant's assertion of the qualified immunity defense, the burden shifts to the plaintiff, who must meet a strict two-part test by showing (1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct." Id. (quotation marks omitted).
Did Williams violate Knopf's First Amendment rights?
Knopf claims that Williams decided not to reappoint Knopf as City Planner in retaliation for Knopf having exercised his First Amendment rights-more specifically, for having emailed City Attorney Dennis Boal-regarding the Bear Meadows project. The threshold question, in deciding whether Knopf can survive summary judgment on this claim, is whether he can establish that Williams actually violated his First Amendment rights.
"A public employer may not 'discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech.' "
*952 Helget v. City of Hays, KS, 844 F.3d 1216, 1221 (10th Cir. 2017) (quoting Rankin v. McPherson, 483 U.S. 378, 383, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) ). " 'Speech by citizens on matters of public concern lies at the heart of the First Amendment,' and 'public employees do not renounce their citizenship when they accept employment.' " Id. (quoting Lane v. Franks, --- U.S. ----, 134 S.Ct. 2369, 2377, 189 L.Ed.2d 312 (2014) ). "Therefore, the Supreme Court 'has cautioned time and again that public employers may not condition employment on the relinquishment of constitutional rights.' " Id. (quoting Lane, 134 S.Ct. at 2377 ).
"Nevertheless, a public employer must be able to control the operations of its workplace." Id. (citing Pickering v. Bd. of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) ). " 'Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services.' " Id. (quoting Garcetti v. Ceballos, 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) ). As a result, "the First Amendment protection of a public employee's speech depends on a careful balance 'between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " Lane, 134 S.Ct. at 2374 (quoting Pickering, 391 U.S. at 568, 88 S.Ct. 1731 ).
The so-called Garcetti / Pickering test, which is derived from these principles, governs our review of Knopf's First Amendment retaliation claim. See Helget, 844 F.3d at 1221. We outlined the contours of this test in our decision in Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192 (10th Cir. 2007) :
After the Supreme Court's recent decision in Garcetti, it is apparent that the " Pickering" analysis of freedom of speech retaliation claims is a five step inquiry which we now refer to as the " Garcetti / Pickering" analysis. First, the court must determine whether the employee speaks "pursuant to [his] official duties." Garcetti, 126 S.Ct. at 1960 ; see also Mills, 452 F.3d at 647 (" Garcetti... holds that before asking whether the subject matter of particular speech is a topic of public concern, the court must decide whether the plaintiff was speaking 'as a citizen'...."). If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech "simply reflects the exercise of employer control over what the employer itself has commissioned or created." Garcetti, 126 S.Ct. at 1960. Second, if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern. See Green v. Bd. of County Commr's, 472 F.3d 794, 798 (10th Cir. 2007) ; Mills, 452 F.3d at 647-48. If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends. Third, if the employee speaks as a citizen on a matter of public concern, the court must determine "whether the employee's interest in commenting on the issue outweighs the interest of the state as employer." Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007). Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that his speech was a "substantial factor or a motivating factor in [a] detrimental employment decision." Lybrook, 232 F.3d at 1338 (internal quotation marks omitted). Finally, if the employee establishes that his *953 speech was such a factor, "the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech." Id. at 1339 (internal quotation marks omitted).
492 F.3d at 1202-03. "The first three steps" of this test "concern questions of law for the courts, and the last two concern questions of fact" that are typically left for a jury. Helget, 844 F.3d at 1222.
The district court in this case concluded with respect to the first three of these steps that (1) "the email communication was not pursuant to [Knopf's] official duties," Aplt. App., Vol. V at 116, (2) "the subject matter of the email regarded a matter of public concern," id., and (3) "the interest of the City d[id] not outweigh the interest of [Knopf] regarding the particular speech at issue in this matter," id. at 121. As to the fourth and fifth steps, the district court concluded that "[t]he information presented ... in support and opposition to the motion for summary judgment establishe[d] a factual question on both of these issues and" thus it "w[ould] allow the jury to determine these questions." Id.
Williams argues in his appeal that the district court applied the first and third steps "too narrowly and did not properly evaluate the undisputed facts when considering the defense of qualified immunity." Aplt. Br. at 10. Because the first and third steps involve conclusions of law, Williams' challenge to the district court's conclusion on each of these steps is properly before us in this interlocutory appeal and we review those determinations de novo. See Helget, 844 F.3d at 1221. As discussed below, I conclude that the district court did not err with regard to its analysis of step one (although it is a close question), but did err with regard to its analysis of step three.
a) Step One
Step One of the Garcetti / Pickering test requires us to decide whether Knopf's email communication to Boal was pursuant to Knopf's official duties. It is well-established that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Seifert v. Unified Gov't of Wyandotte Cty., 779 F.3d at 1151 (internal quotation marks omitted).
Unfortunately, "[t]here are no bright line rules to make this determination." Chavez-Rodriguez v. City of Santa Fe, 596 F.3d 708, 713 (10th Cir. 2010). That said, however, we take "a practical view of all the facts and circumstances surrounding the speech and the employment relationship" and "a broad view of the meaning of speech that is pursuant to an employee's official duties." Chavez-Rodriguez v. City of Santa Fe, 596 F.3d 708, 713 (10th Cir. 2010) (internal quotation marks omitted). We "ha[ve] further emphasized that no one factor is dispositive," and that, instead, the "guiding principle is that speech is made pursuant to official duties if it involves 'the type of activities that the employee was paid to do.' " Id. (brackets omitted) (quoting Green v. Bd. of Cty. Comm'rs, 472 F.3d 794, 801 (10th Cir. 2007) ). "Stated another way, 'if an employee engages in speech during the course of performing an official duty and the speech reasonably contributes or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties.' " Id. (quoting Brammer-Hoelter, 492 F.3d at 1204 ).
As an initial matter, it appears to be undisputed that Knopf drafted the email on and sent it from his work computer. Further, the email was sent exclusively to *954 Boal, who was also a City employee (albeit a contract employee as opposed to a full-time employee). Attached to the email was a prior email thread discussion between a group of City employees, including Knopf. Thus, the entire context of the speech was "more akin to a work discussion between two public officials" than a communication between a private citizen and a public official or between two private citizens. Chavez-Rodriguez, 596 F.3d at 714. But that context, standing alone, does not appear to be sufficient under Tenth Circuit law to establish that the email was made pursuant to Knopf's official duties. Id. Moreover, the fact that the email "concerns information acquired [by Knopf] by virtue of his public employment does not transform that speech into employee-rather than citizen-speech." Lane, 134 S.Ct. at 2379.
The purpose of the email appears to have been two-fold: to inform Boal, in his official capacity as City Attorney responsible for overseeing the City's contracts, of the issues regarding T-Bar's change request (i.e., Honey's position regarding it and his potential conflict of interest) and to persuade Boal, again in his official capacity, to take some type of action, such as speaking with Williams and/or Honey, to ensure that T-Bar's change request was rejected.
It is undisputed that Boal was not Knopf's supervisor and was instead simply another department head, similar to Knopf, albeit one who had responsibility for overseeing City contracts. Although "an employee's decision to go outside of their ordinary chain of command does not necessarily insulate their speech," Rohrbough v. Univ. of Colo. Hosp. Auth., 596 F.3d 741, 747 (10th Cir. 2010), it is a factor that, in my view, weighs in favor of a conclusion that the email was not made pursuant to Knopf's official duties. That is because, to the extent that Knopf had any involvement in the Bear Meadows project at all (and the record suggests his role was, at most, limited to being a "planning resource" for the project), it is undisputed that his official duties in that regard did not extend to overseeing the work performed on the project by contractors or subcontractors, or, more specifically, to reviewing or approving change requests, such as the one that was submitted by T-Bar. Thus, this was not a matter of Knopf "going outside of his chain of command" regarding an issue that fell within his official duties, but rather of Knopf reaching out to another City employee whose official duties encompassed the issue that Knopf was concerned about.
Another relevant inquiry in analyzing the first step is whether, in considering Knopf's email to Boal, there is a "relevant analogue to speech by citizens who are not government employees." Garcetti, 547 U.S. at 424, 126 S.Ct. 1951. Presumably, any citizen armed with the information that Knopf had could have contacted Boal, who as a public official was presumably accessible to citizens either by phone or email, to express concern about T-Bar's change request and to ask Boal to investigate and potentially take action regarding it. Thus, this weighs in favor of treating the email as outside of Knopf's official duties.
In the end, although it is a close question, I agree with the district court that Knopf's email did not fall within the scope of his official duties as a City employee. Thus, I conclude that the district court did not err in analyzing the first step of the Garcetti / Pickering framework.
b) Step Three
Williams also takes issue with the district court's conclusion regarding the third step of the Garcetti / Pickering test, i.e., that "the interest of the City d[id] not outweigh the interest of [Knopf] regarding *955 the particular speech at issue in this matter." Aplt. App., Vol. V at 121.
The Supreme Court "ha[s] recognized that government employers often have legitimate interests in the effective and efficient fulfillment of their responsibilities to the public, including promoting efficiency and integrity in the discharge of official duties, and maintaining proper discipline in public service." Lane, 134 S.Ct. at 2381 (internal quotation marks and brackets omitted). Thus, the Court has "recognized as pertinent considerations whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." Rankin v. McPherson, 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). At the same time, the Court has "cautioned ... that a stronger showing of government interests may be necessary if the employee's speech more substantially involves matters of public concern." Lane, 134 S.Ct. at 2381 (internal quotation marks and brackets omitted). And the governmental defendant bears the burden of proof to justify its regulation of speech. Connick v. Myers, 461 U.S. 138, 150, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).
Williams argues that, as part-time Mayor of the City, he must have faith and confidence in his department heads, including Knopf, and that the department heads, including Knopf and Boal, must work together. Williams in turn argues that Knopf's email was contrary to these goals and had a significant likelihood of being disruptive. Indeed, Williams argues that "[w]hat [Knopf] did here was an intentional 'end run' around his supervisor [Williams] to undermine [Williams'] position and to undermine Honey." Aplt. Br. at 24. Further, Williams argues, Knopf "was concealing information from the Mayor, communicating with other City employees without including the Mayor, and was insubordinate." Id. Lastly, Williams argues that he "found this email to be indicative of greater concerns that he had over the course of the year with [Knopf]." Id. at 26. According to Williams, he "had a significant interest in being able to trust his department heads and for them to be able to work together in an efficient manner and he no longer had trust in [Knopf]." Id.
I conclude that these are legitimate concerns on the part of Williams specifically and the City in general. Although the record indicates that it was not part of Knopf's official duties to deal with T-Bar's change request, it is undisputed that T-Bar's change request fell clearly within the scope of the Mayor's official duties. More specifically, it was part of the Mayor's official duties to consider and vote on the change request and, according to the record, the Mayor ultimately voted to approve T-Bar's change request. Presumably, Knopf, a longtime City employee, was aware that Williams would ultimately be voting on T-Bar's change request and both could and should have approached Williams, who was his direct supervisor, with any concerns he had about T-Bar's change request. By failing to do so, and instead contacting another City department head (Boal) and calling into question the judgment and ethics of yet another department head (Honey), Knopf's actions created a potential for disruption (between at least himself and Boal, as well as possibly Honey and others) and also undermined Williams' trust and confidence in Knopf. And that in turn would have had a detrimental impact on the working relationship between Williams and Knopf.
*956 To be sure, Boal conceded in his deposition that Knopf had correctly interpreted the contract provisions regarding the Meadows Project and that, consequently, it would have been justified for the City to reject T-Bar's change request. That said, however, there is no evidence that it was illegal for the Mayor and City Council to approve the change request. Moreover, the fact that there was a legitimate contractual basis for rejecting T-Bar's change request does not override the legitimate interests expressed by Williams and the City.
For these reasons, I conclude, contrary to the determination made by the district court, that the interests expressed by Williams and the City were significant enough to outweigh Knopf's interest in speaking to Boal. Consequently, I conclude that Knopf failed to establish that Williams violated his First Amendment rights by failing to reappoint him as City Planner.
Did Williams violate clearly established law?
In denying summary judgment in favor of Williams, the district court also concluded that Knopf established that the law applicable to his First Amendment retaliation claim was clearly established at the time that Williams decided not to reappoint him as City Planner. Judge Matheson concludes, and I agree, that the district court erred in reaching this conclusion.
According to the Supreme Court, "[a] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, --- U.S. ----, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam) (internal quotations omitted). The Supreme Court has "repeatedly told [lower] courts ... not to define clearly established law at a high level of generality." Id. (internal quotations omitted). In other words, broad principles typically cannot constitute clearly established law. White v. Pauly, --- U.S. ----, 137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017) (per curiam). Although it is not necessary that there be "a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." Id. (internal quotations omitted).
As discussed above, it is a very close question whether, under step one of the Garcetti / Pickering framework, Knopf's email was made pursuant to his official duties or was, instead, a matter of private speech. The difficulties posed by that analysis highlight why it may not have been clearly established in late 2015 that Knopf's email constituted protected First Amendment speech, rather than simply work-related speech. Moreover, Knopf has not pointed to any case that is remotely factually similar from 2015 or before, i.e., a case in which a court held that a similar email constituted protected First Amendment speech by a public employee.[1] Thus, I conclude that it was entirely reasonable for Williams to "believe that, as a legal matter, [Knopf] w[as] speaking in [his] capacity as [an] employee[ ] of the [City]" rather than as a private citizen. Crouse v. Town of Moncks Corner, 848 F.3d 576, 585 (4th Cir. 2017).
Likewise, Knopf has not pointed to a single case that is remotely factually similar in terms of discussing whether a public employee can be terminated (or not reappointed) in response to having sent an *957 email to another public employee regarding a matter of public concern. Thus, again, he has failed to demonstrate that it was clearly established, in late 2015 or early 2016, that it was unconstitutional for a supervisor to terminate a subordinate for having sent an email like the one that Knopf sent.
In short, Knopf has failed to identify clearly established law that is "particularized" to the facts of his case. White, 137 S.Ct. at 552. That is because, as of late 2015 and early 2016, the outcome of the Pickering balancing test, as applied to the facts presented in this case, did not place "beyond debate" the questions of whether Knopf spoke as a private citizen when he sent his email and, in turn, whether it was proper for Williams to discipline Knopf for sending the email. Ashcroft v. al-Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). Consequently, Williams was entitled to qualified immunity from Knopf's First Amendment retaliation claim.

Garcetti v. Ceballos, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) ; Pickering v. Bd. of Educ., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).