**F I L E D**

PUBLISH

**December 12, 2006**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

103 INVESTORS I, L.P.,

        Plaintiff-Appellant,

v.

No. 05-3385

SQUARE D COMPANY,

        Defendant-Appellee.

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 01-CV-2504-KHV)**

_____

Submitted on the briefs:[*]

David R. Buchanan, Dennis J. Cassidy, Brown & James, P.C., Kansas City, Missouri, for Plaintiff-Appellant.

Thomas N. Sterchi, James S. Kreamer, Baker, Sterchi, Cowden & Rice, L.L.C., Overland Park, Kansas, for Defendant-Appellee.

_____

Before **TYMKOVICH**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

_____

**TYMKOVICH**, Circuit Judge.

_____

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff 103 Investors I, L.P. appeals from the district court's decision entering judgment in favor of defendant Square D Company on plaintiff's products liability claims. Plaintiff argues that the district court: (1) abused its discretion by granting defendant's spoliation motion; (2) erred in granting defendant's motion for judgment as a matter of law on the failure to warn claim; (3) abused its discretion by excluding the expert testimony of Carl Martin; (4) erred by granting summary judgment in favor of defendant on the manufacturing defect claim; and (5) abused its discretion by sustaining defendant's objection to the playing of the videotaped deposition of Ron Rush. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

## I. Background

In March 2001, a fire caused damage to an office building that plaintiff owned. Plantiff investigated the fire and ultimately attributed the cause of the fire to a busway malfunction. A busway is a system of four insulated aluminum bars in aluminum casing that run from the basement to the top floor and distribute electricity to the floors. Defendant manufactured the busway and another company installed it in 1978. Plaintiff brought an action asserting strict liability and negligence based on manufacturing defects and failure to warn.

Plaintiff advanced alternate theories for recovery. Plaintiff argued that the presence of contaminants in the busway indicated that there was a manufacturing

defect. Alternatively, plaintiff argued that if the contaminants had infiltrated the busway through water intrusion after it left defendant's control, then defendant had failed to place a warning label on the product instructing owners to keep the high-voltage busway free of water and other contaminants.

After discovery, defendant filed for summary judgment. The district court granted the motion based on its rejection of plaintiff's expert reports as untimely. Plaintiff appealed and this court reversed the district court's decision because the timeliness of plaintiff's report had been unfairly affected by extensions that had been granted to defendant without a corresponding extension for plaintiff. *See 103 Investors I, L.P. v. Square D Co.*, 372 F.3d 1213, 1216-17 (10th Cir. 2004).

On remand, defendant again filed a motion for summary judgment and for exclusion of one of plaintiff's experts, Carl Martin, under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). After the district court held a *Daubert* hearing, it granted defendant's motion to exclude Mr. Martin's testimony and granted defendant's motion for summary judgment on the manufacturing defect and negligence claims. The district court denied defendant's motion for summary judgment on the failure to warn claim.

Prior to trial on the failure to warn claim, defendant filed a motion for sanctions for spoliation of evidence because plaintiff had failed to preserve all but a small section of the busway. The case proceeded to trial on the sole issue of

whether the warning label defendant placed on its busways was placed on the busway in question when it left defendant's control in 1978. Plaintiff elicited testimony from Gregory Goens, the building maintenance supervisor, who testified that he had not seen a warning on the busway. His testimony was controverted by Ron Rush, defendant's senior staff engineer, who testified that in the manufacturing of the busways, defendant placed a warning label on specific components of the busway assembly and on the installation instructions.

At the close of evidence, defendant moved for judgment as a matter of law on the basis that there was no evidence the busway lacked a warning label when it left defendant's control. At that point, the district court granted defendant's motion for sanctions for spoliation of evidence and struck Mr. Goens' testimony. The district court then granted the motion for judgment as a matter of law, concluding that even with Mr. Goens' testimony there remained an absence of evidence on whether a warning label was missing from the busway at the time it left defendant's control in 1978. This appeal followed.

## II. Discussion

### A. Spoliation Sanction

Plaintiff first argues that the district court erred in granting defendant's motion for spoliation and striking the testimony of Mr. Goens. In the motion, defendant asserted that plaintiff's investigators had access to the busway after the fire and were able to inspect and evaluate it. Then without notice to the

defendant, plaintiff threw away fifty to sixty feet of the busway and saved only four feet. The portion of the busway that was saved was not a piece that would have contained a warning. Defendant argued that plaintiff had a duty to preserve the busway and that defendant was prejudiced by plaintiff's actions because there was no way for defendant to defend against the claim that the busway lacked a warning. The district court agreed and struck Mr. Goens' testimony as a sanction for the spoliation.

Plaintiff asserts that the district court should not have granted defendant's motion without a showing that plaintiff was acting in bad faith when it destroyed the majority of the busway after the fire, relying on *Aramburu v. Boeing Co.*, 112 F.3d 1398 (10th Cir. 1997). In *Aramburu*, however, we did not reach the question of what kinds of sanctions could be used for spoliation generally. Instead, we focused solely on the use of an adverse inference jury instruction as a spoliation sanction. We noted that "the general rule is that bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction." *Id.* at 1407.

In its ruling on the spoliation motion, the district court cited to *Aramburu* as guiding precedent and explained that an adverse-inference jury instruction would not be appropriate because defendant had not shown that plaintiff acted in bad faith. To support its decision to impose a different type of spoliation sanction

without a showing of bad faith, the district court cited to an unpublished decision from this court, *Jordan F. Miller Corp. v. Mid-Continent Aircraft Service, Inc.*, No. 97-5089, 1998 WL 68879 (10th Cir. Feb. 20, 1998). In that case, we noted that "[c]ourts have not generally imposed a similar requirement of bad faith when considering other sanctions for the spoliation of evidence." *Id.* at *4 (citing *Allstate Ins. Co. v. Sunbeam Corp.*, 53 F.3d 804, 806-07 (7th Cir. 1995); *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267-69 (8th Cir. 1993); *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368-69 (9th Cir. 1992)). We then upheld the dismissal of Mr. Miller's damages claim as a spoliation sanction without a showing of bad faith on the part of Mr. Miller. *Id.* at *7.

Defendant was not required to show that plaintiff acted in bad faith in destroying the evidence in order to prevail on its request for spoliation sanctions. The district court found that plaintiff had a duty to preserve the evidence because it knew or should have known that litigation was imminent, and defendant was prejudiced by the destruction of the evidence because there was no substitute for a direct visual examination of the busway. The district court also imposed the least severe sanction that would be appropriate to balance out the prejudice to the defendant. We conclude that the district court did not abuse its discretion in granting defendant's motion for sanctions and striking Mr. Goens' testimony.

**B. Judgment as a Matter of Law on the Failure to Warn Claim**

Plaintiff next argues that the district court erred when it sustained defendant's motion for judgment as a matter of law on the failure to warn claim. It contends there was sufficient evidence from which a reasonable juror could have concluded that all the elements of a prima facie case for strict liability were met. In order to establish a prima facie case for negligence or strict liability in a Kansas products liability case, plaintiff must produce evidence that shows: "(1) the injury resulted from a condition of the product; (2) the condition was an unreasonably dangerous one; and (3) the condition existed at the time it left defendant's control." *Messer v. Amway Corp.*, 210 F. Supp. 2d 1217, 1227 (D. Kan. 2002) (citing *Jenkins v. Amchem Prods. Inc.*, 886 P.2d 869, 886 (Kan. 1994)). Plaintiff asserted at trial that defendant had failed to include a warning label on the busway regarding the risks of water infiltration into the busway. Defendant offered testimony that it did place such a warning label on the busway when it was manufactured.

In ruling in favor of the defendant on its motion for judgment as a matter of law, the district court concluded that there was "a complete absence of proof on the issue of whether the warnings were missing from the bus duct system at the time it left the control of the Square D Company." Aplt. App. at 18. The court noted that it would reach the same conclusion even if the testimony of Mr. Goens was considered by the jury.

Plaintiff did not own the building when the busway was installed and it failed to elicit testimony from anyone who was present when the busway left the control of defendant and was installed in the building. Although Mr. Goens testified that he had not seen a warning on the busway, he did not start working at the building until five years after the busway was installed. Moreover, the fire did not occur until twenty-three years after the busway was installed, prompting the district court to observe that "I don't think that any jury could reasonably conclude that the bus duct was still in the same condition as it was when it left the manufacturer's premises except by engaging in speculation." *Id.* at 19.

We agree. The plaintiff failed to present sufficient evidence on a necessary element for its prima facie case, that the unreasonably dangerous condition–lack of a warning label–existed at the time the busway left defendant's control. The district court did not err in granting defendant's motion for judgment as a matter of law.

### C. Excluding Expert Testimony

Plaintiff also asserts that the district court abused its discretion in excluding the testimony of its expert. It contends that Mr. Martin's reports and testimony met the *Daubert* tests for scientific reliability.

To determine whether an expert opinion is admissible, the district court performs a two-step analysis. First, the court must determine whether the expert is qualified by "knowledge, skill, experience, training, or education" to render an

opinion. *See* Fed. R. Evid. 702. Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable under the principles set forth in *Daubert*. In determining whether a particular scientific theory is reliable, the court may consider several nondispositive factors: (1) whether the proffered theory can and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community. *Daubert*, 509 U.S. at 593-94.

Mr. Martin is a certified fire investigator and performs 150 to 200 cause-and-origin analyses each year. He opined that contaminants in the inner bus bar caused premature deterioration of the mylar insulation, which resulted in a short circuit between the bus bars thereby generating heat through the insulation and causing the fire. Mr. Martin concluded that the contaminants must have originated during the manufacturing process and that this was a manufacturing defect.

In considering the issue of Mr. Martin's qualifications to render an opinion on whether the busway contained a manufacturing defect, the district court noted that it did not question Mr. Martin's general qualifications as a fire investigator. The district court concluded that Mr. Martin was qualified to testify on the origin of the fire. The court determined, however, that plaintiff had not established that Mr. Martin had any expertise that was relevant to the question of how the

contaminants got into this particular duct system. In making this determination, the court noted that Mr. Martin had testified that: he is not familiar with the basic steps of the manufacturing processes specific to busways; he is not familiar with what precautions are taken during the manufacturing process; he does not know what codes govern the manufacturing process or whether defendant met those standards; and he did not conduct any research into the manufacturing of busways. In addition, the court noted that plaintiff had not demonstrated any generally accepted scientific methodology for addressing the question of how the contaminants got into the busway or that Mr. Martin had followed any such method.

Mr. Martin's methodology was to conduct one test–the so-called permeability test. In this test, Mr. Martin poured water on top of the mylar insulation to see whether it permeated the mylar. From this test, Mr. Martin concluded that water could not go through the surface of mylar. The district court noted, however, that Mr. Martin conducted no test to see whether water and other contaminants could go around the mylar insulation into the busway system. The court pointed out the undisputed evidence that not all portions of the busway system were insulated with mylar, the mylar insulation was not sealed, and all of the janitorial closets that abutted the bus duct system revealed evidence of water stains running from the slop sinks to the busway system. Although Mr. Martin admitted during his testimony that there was a possibility "that water could drain

down inside the bus duct, contact the bus bars, and create a short-circuit which could ignite a fire," Aplt. App. at 26, he believed that this was a "far stretch," *id.* at 27.

The district court concluded that Mr. Martin could not testify that the contaminants in the busway resulted from a manufacturing defect, stating:

> If science offers a generally accepted methodology for determining whether the contamination resulted from the manufacturing process, or whether it resulted from janitorial practices, Martin has not explained what it is or how he applied it in this case. Martin's testing and hypothesis did not account for the admitted fact that water can enter a bus duct by going around the mylar insulation. This possibility cannot be summarily eliminated by Martin's unexplained opinion that this scenario would be a "far stretch." On this record, Martin's opinion that the contamination cannot be explained as anything but a manufacturing defect is not shown to be grounded in expertise or accepted methodology.

*Id.* at 33. The district court did not abuse its discretion in excluding Mr. Martin's testimony on this issue.

**D. Summary Judgment on the Manufacturing Defect Claim**

Plaintiff next asserts that the district court erred in granting defendant's motion for summary judgment on the manufacturing defect claim. In making this argument, however, plaintiff relies primarily on its contention that the district court abused its discretion by excluding plaintiff's expert testimony and that the expert testimony creates a genuine issue of material fact. As discussed above, the district court properly excluded the testimony of plaintiff's expert.

-11-

The only other argument that plaintiff advances on this issue is that this court's earlier decision in this case indicated that the manufacturing defect claim should be decided by a jury. Although that decision did reverse the district court's earlier grant of summary judgment in favor of defendant, the decision was based solely on this court's conclusions that the district court abused its discretion in rejecting plaintiff's expert rebuttal report as untimely and in relying on the exclusion of the rebuttal report to reject plaintiff's other expert reports, and that therefore the district court erred in granting summary judgment based on the exclusion of all of plaintiff's expert reports. *103 Investors I, L.P.*, 372 F.3d at 1218. There was no discussion of whether the expert opinions ultimately should be admissible or whether the opinions created a genuine issue of material fact. *Id.* at 1214-18.

On remand, the district court granted summary judgment on the manufacturing claim because plaintiff produced no evidence, other than Mr. Martin's excluded expert testimony, that the busway was unreasonably dangerous when it left defendant's control. Plaintiff has not shown that the district court erred in making this determination.

## E. The Videotaped Deposition of Ron Rush

Finally, plaintiff contends that the district court abused its discretion by not letting it play the videotaped deposition of Ron Rush during trial. Plaintiff argues that it should have been able to use Mr. Rush's deposition for any purpose

because he was designated as a Rule 30(b)(6) representative. While it is true that Mr. Rush had been identified as a Rule 30(b)(6) representative for an earlier deposition, defendant had not designated him as a Rule 30(b)(6) representative for the deposition in question. Plaintiff's counsel admitted as much at trial. *See* Aplee. Supp. App., Vol. II at 415-16.

More importantly, Mr. Rush was testifying in person at trial and plaintiff's counsel was able to elicit live testimony from him and to impeach him with the deposition transcript. There was no prejudice to the plaintiff in not being able to play the videotaped deposition. The district court did not abuse its discretion in sustaining defendant's objection to the playing of the videotaped deposition.

## III. Conclusion

The judgment of the district court is AFFIRMED.